IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KIMBERLY SUE BEINING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 13-305 |
| ) | |
| CAROLYN W. COLVIN, ACTING ) | Judge Cathy Bissoon |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

# **MEMORANDUM AND ORDER**

## **I. MEMORANDUM**

For the reasons that follow, Plaintiff's Motion for Summary Judgment (Doc. 13) will be granted, and Defendant's Motion for Summary Judgment (Doc. 15) will be denied.

Plaintiff Kimberly Sue Beining ("Beining") protectively applied for disability insurance benefits and supplemental security income ("SSI") benefits on January 8, 2010, alleging that she had become "disabled" on December 23, 2009. (R. at 128). On January 28, 2010, her application for SSI benefits was denied on the ground that she was not financially eligible to receive them. (R. at 80). Pennsylvania's Bureau of Disability Determination ("Bureau") denied Beining's application for disability insurance benefits on August 4, 2010. (R. at 90). Six days later, Beining filed a request for an administrative hearing. (R. at 96). On July 7, 2001, a hearing was held before Administrative Law Judge ("ALJ") David F. Brash. (R. at 34). Beining, who was represented by counsel, appeared and testified at the hearing. (R. at 40-66). Dr. William H. Reed, an impartial vocational expert, provided testimony about the expectations of employers existing in the national economy. (R. at 66-72). In a decision dated July 18, 2011,

1

the ALJ determined that Beining was not "disabled" within the meaning of the Social Security Act ("Act"). (R. at 19-29).

On August 12, 2011, Beining sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council. (R. at 14). The Appeals Council denied the request for review on January 4, 2013, thereby making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner") in this case. (R. at 1). Beining commenced this action on March 1, 2013, seeking judicial review of the Commissioner's decision. (Docs. 1-2). The parties later filed cross-motions for summary judgment. (Docs. 13 & 15). Those motions are now ripe for adjudication.

Beining was born on July 29, 1964. (R. at 41). She graduated from high school in 1982. (R. at 41, 146). Shortly after completing high school, Beining procured a license to work in the field of cosmetology. (R. at 43-44). Although Beining never worked in a beauty salon, she sometimes administered an acrylic substance to clients' nails in her home. (R. at 44). Beining eventually stopped working as a cosmetologist due to breathing difficulties attributable to her exposure to that substance. (R. at 44). At the time of the hearing, her license to work as a cosmetologist was no longer active. (R. at 44).

Beining later started to work as a cook for a restaurant known as Dave's Country Meats.[1] (R. at 43, 146, 168). While working in that capacity, she was required to stand and walk on a frequent basis. (R. at 60). Dr. Reed classified the position as a "semi-skilled" job at the "medium" level of exertion. (R. at 66).

---

[1] The timing of Beining's commencement of employment with Dave's Country Meats is not entirely clear from the record. The documentary record suggests that Beining started to work as a cook in 1995. (R. at 146, 168). At the hearing, however, Beining testified that she had worked at Dave's Country Meats from June 2001 through June 2008. (R. at 43).

As a child, Beining suffered from rheumatic fever. (R. at 47). That illness ultimately caused the mitral valve of her heart to fail. (R. at 47). Beining's mitral valve was surgically replaced in 2004. (R. at 47, 243). Since her ribs had to be broken and wired back together, the operation limited her lifting and carrying abilities. (R. at 47-48). An echocardiogram performed in 2006 yielded normal results. (R. at 243).

In February 2009, Beining started to work as a scheduler for a company known as Filter Queen Vacuums. (R. at 41-42, 243). At Filter Queen, she spent most of her time in a sitting position. (R. at 41). Dr. Reed classified Beining's scheduler job as a "semi-skilled" position at the "sedentary" level of exertion.[2] (R. at 66-67).

On May 8, 2009, arthroscopic surgery was performed on Beining's right knee. (R. at 266). The operation was designed to repair tears in her meniscus and tendons. (R. at 51). Three and a half months later, she was "still having trouble with swelling and pain." (R. at 282). Beining's persistent symptoms led Dr. Victor J. Thomas to conclude that she was suffering from a severe form of arthritis. (R. at 282). At the hearing, Beining testified that her right knee sometimes gave out on her, causing her to fall. (R. at 52). She stated that she needed to use a cane in order to keep her balance. (R. at 52). Beining responded in the affirmative when asked whether Dr. Thomas had encouraged her to use a cane. (R. at 62).

In December 2009, Beining suddenly became afflicted with a severe headache while using the restroom in a Kohl's department store. (R. at 499). The headache remained with her for several days. (R. at 499). Dr. Hubert Shick advised Beining to seek treatment in an emergency room if her condition continued to worsen. (R. at 499). On December 31, 2009, Beining began to experience "a complicated migraine [headache] with associated right-sided

---

[2] Although Dr. Reed assumed that Beining had performed "semi-skilled" work for Filter Queen, he left open the possibility that she had held an "unskilled" job. (R. at 66-67).

3

parasthesias." (R. at 42, 497). Believing that she had suffered a stroke, Beining contacted emergency medical personnel. (R. at 42). She was transported to the University of Pittsburgh Medical Center ("UPMC") in an ambulance. (R. at 42). Objective tests later confirmed that Beining's symptoms were attributable to a migraine headache rather than to a stroke. (R. at 43). Beining never returned to work. (R. at 41-42, 145). At the hearing, Beining complained of debilitating migraine headaches occurring at the frequency of two times per month. (R. at 46). She testified that each migraine headache would last for at least three days, and that her longest migraine headaches would endure for as long as two weeks. (R. at 47). Beining's ongoing physical impairments ultimately caused her to suffer from anxiety and depression. (R. at 318).

Dr. Mary Ellen Wyszomierski, a nonexamining medical consultant, reviewed Beining's medical records in order to render an opinion as to whether disability insurance benefits should be awarded. On July 16, 2010, Dr. Wyszomierski opined that Beining could perform a range of "sedentary" work involving only occasional climbing, balancing, stooping and crouching, no kneeling or crawling, and no concentrated exposure to temperature extremes, wetness, humidity, vibration, fumes, odors, dusts, gases, poor ventilation, machinery, heights, or other workplace hazards. (R. at 312-315). In the narrative portion of her consultative report, Dr. Wyszomierski stated that Beining's migraine headaches appeared to be "well controlled." (R. at 317).

On July 27, 2010, Dr. T. David Newman performed a consultative psychological evaluation of Beining in connection with her application for disability insurance benefits. (R. at 318-322). Based on the findings of his evaluation, Dr. Newman reported that Beining had "marked" limitations in her abilities to understand and remember short, simple instructions and "extreme" limitations in her abilities to understand and remember detailed instructions. (R. at 320). Beining's ability to carry out instructions was deemed to be only "moderately" limited.

4

(R. at 320). Dr. Newman indicated that Beining's impairments did not affect her abilities to respond appropriately to work pressures in a usual work setting, respond appropriately to changes in a routine work setting, and interact appropriately with supervisors, co-workers, and members of the general public. (R. at 320-321).

Dr. Emanuel Schnepp, a nonexamining psychological consultant, opined on July 28, 2010, that Beining was "able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairment." (R. at 326). Discussing Beining's mental abilities in detail, Dr. Schnepp explained:

> The claimant's basic memory processes are intact for her recall of both recent and remote events. She can perform simple, routine, repetitive work in a stable environment. She can understand, retain, and follow simple job instructions, i.e., perform one and two-step tasks. She can make simple decisions. Moreover, she would be able to maintain regular attendance and be punctual. Her impulse control is adequate. Additionally, she is able to maintain socially appropriate behavior and can perform the personal care functions needed to maintain an acceptable level of personal hygiene. She is self-sufficient. Also, she can sustain an ordinary routine and adapt to routine changes without special supervision. She can function in production-oriented jobs requiring little independent decision making. The limitations resulting from the impairment do not preclude the claimant from performing the basic mental demands of competitive work on a sustained basis.

(R. at 325). Beining's subjective complaints were deemed to be only "partially credible." (R. at 325).

Dr. Michelle M. Mlakar, a treating physician, asserted on May 18, 2011, that Beining could sit or stand for only one hour during the course of an eight-hour workday. (R. at 479-480). Dr. Mlakar further reported that Beining would usually need to keep her legs elevated for the entire workday, and that she would need to spend roughly three hours per day lying down. (R. at 480). Several postural and environmental limitations were also identified. (R. at 480-481). When questioned by Beining's counsel, Dr. Reed testified that no jobs existed in the national

5

economy for an individual with the functional limitations described by Dr. Mlakar. (R. at 70-72).

At the second step of the sequential evaluation process, Beining was found to be suffering from degenerative joint disease of the knees, fibromyalgia, obesity, asthma, migraine headaches, degenerative disc disease, osteopenia, osteoarthritis, a cognitive impairment, depression, anxiety, a pain disorder, a defective mitral valve, hypertension, high cholesterol, vitamin B and D deficiencies, and sleep apnea. (R. at 21). Her degenerative joint disease, fibromyalgia, obesity, asthma, migraine headaches, degenerative disc disease, osteopenia, osteoarthritis, cognitive impairment, depression, anxiety, pain disorder and defective mitral valve were deemed to be "severe" under the Commissioner's regulations. (R. at 21). The ALJ concluded that Beining's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 21-23). In accordance with 20 C.F.R. § 404.1545, the ALJ assessed Beining's residual functional capacity as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can only operate bilateral foot controls occasionally and can never climb ladders, ropes, and scaffolds, kneel, and crawl. She can occasionally climb ramps and stairs, balance, stoop, and crouch. She cannot operate a motor vehicle. The claimant requires a sit/stand option at the workstation with intervals no more frequent than every 30 minutes and with little or no accompanying off-task time in transition. She requires the use of a hand-held assistive device, held in the dominant hand, while ambulating. The claimant must avoid concentrated exposure to temperature extremes, wetness, humidity, vibration, gases, fumes, and like respiratory irritants. She must avoid even moderate exposure to dangerous machinery, exposed heights, and like hazards. The claimant is limited to understanding, remembering, and carrying out simple instructions and performing simple, routine tasks. She is limited to a low stress work environment, which means no production rate pace work, but, rather, goal-oriented work with only occasional changes in work setting.

(R. at 23-24). Given this assessment, the ALJ determined that Beining could work as a surveillance systems monitor, fishing reel assembler, or jewelry stringer. (R. at 28). Dr. Reed's testimony established that those jobs existed in the national economy. (R. at 68-69).

The Commissioner's regulations expressly take administrative notice of the job descriptions found in the Dictionary of Occupational Titles ("DOT"). 20 C.F.R. § 404.1566(d)(1). Social Security Ruling 00-4p requires an administrative law judge to ask a vocational expert whether his or her testimony conflicts with information contained in the DOT, and to "elicit a reasonable explanation" for any apparent conflict. *Burns v. Barnhart*, 312 F.3d 113, 127 (3d Cir. 2002). At the hearing, the ALJ advised Dr. Reed of his obligation to state the basis for any vocational opinion that was not consistent with the DOT's job descriptions. (R. at 65). No conflict was identified or discussed by Dr. Reed. (R. at 64-72). In the portion of his decision discussing the vocational evidence, the ALJ stated as follows:

> Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles. The vocational expert testified that the DOT does not address the option to sit or stand. He stated that he based his testimony on his experience in the field, and I accept these statements.

(R. at 28). Unfortunately, the "statements" attributed to Dr. Reed and "accepted" by the ALJ do not appear in the transcript of the hearing. (R. at 64-72). Beining argues that the ALJ's failure to resolve the apparent conflict between Dr. Reed's testimony and the DOT requires an automatic reversal of the Commissioner's decision in this case, or a remand for further proceedings. (Doc. 14 at 23-29).

Because the DOT does not address the availability of a sit/stand option, Dr. Reed's testimony was not *necessarily* inconsistent with the DOT's job descriptions. *Conn v. Astrue*, 852 F.Supp.2d 517, 528-529 (D. Del. 2012). Nonetheless, the United States Court of Appeals for the

7

Third Circuit has observed that an administrative law judge's failure to properly resolve tension between information found in the DOT and testimony given by a vocational expert may require a remand even if the particular circumstances at issue do not fall within the literal scope of Social Security Ruling 00-4p. *Rutherford v. Barnhart*, 399 F.3d 546, 557 (3d Cir. 2005). The fact that the ALJ found it necessary to address the issue in his decision suggests that a perceived conflict existed between the DOT's job descriptions and Dr. Reed's testimony. (R. at 28). Given that the "testimony" relied upon by the ALJ to resolve that conflict does not appear in the transcript, the conflict remains unresolved. (R. at 64-72). The existence of such an "unexplained conflict" does not warrant a remand in every conceivable situation. *Jones v. Barnhart*, 364 F.3d 501, 506, n. 6 (3d Cir. 2004). The propriety of a remand depends on the extent to which the perceived conflict relates to dispositive factual issues. *Boone v. Barnhart*, 353 F.3d 203, 205-209 (3d Cir. 2003). Under the present circumstances, however, the discrepancy between the information contained in the DOT and the testimony given by Dr. Reed is sufficiently dispositive to justify a remand.

The ALJ concluded that Beining needed *both* a sit/stand option at thirty-minute intervals *and* an accommodation permitting her to use a hand-held assistive device in her dominant hand while ambulating. (R. at 23). Dr. Reed stated that those accommodations would not affect Beining's ability to perform the duties of the "sedentary" positions described in his testimony. (R. at 69-70). Despite the ALJ's admonition that any conflicts between the DOT and the testimony needed to be explained, Dr. Reed never discussed the relationship between the DOT's job descriptions, its silence concerning the sit/stand option, and Beining's need to use a cane. (R. at 64-72). It may be that an individual working as a surveillance systems monitor, fishing reel assembler, or jewelry stringer would not need to ambulate at all, making the cane irrelevant to

8

the inquiry. Nevertheless, that is not clear from the testimonial record. The ALJ's boilerplate attribution of certain "statements" to Dr. Reed cannot reasonably be regarded as "substantial evidence" of jobs existing outside of the confines of the DOT's job descriptions.[3] (R. at 28).

"An immediate award of benefits is appropriate only when the evidentiary record has been fully developed, and when the evidence as a whole clearly points in favor of a finding that the claimant is statutorily disabled." *Ambrosini v. Astrue*, 727 F.Supp.2d 414, 432 (W.D. Pa. 2010). In response to questions posed by Beining's counsel, Dr. Reed testified that no jobs existed in the national economy for an individual who needed to lie down for three hours per day and keep her legs elevated while working. (R. at 70-71). If Dr. Mlakar's assessment were to be credited, it would inevitably result in an award of benefits. (R. at 479-481). Nonetheless, the opinion of a treating physician does not bind the Commissioner on the issue of a claimant's residual functional capacity. *Brown v. Astrue*, 649 F.3d 193, 196, n. 2 (3d Cir. 2011). In this case, the ALJ accorded "little weight" to Dr. Mlakar's opinion. (R. at 27). Some of the limitations described by Dr. Mlakar appear to be rather extreme. For instance, Dr. Mlakar indicated that Beining could only sit or stand for a total of one hour throughout the course of an eight-hour workday. (R. at 479-480). In a function report submitted to the Bureau, Beining stated that she sometimes went shopping for more than two hours. (R. at 157). It is difficult to fathom how someone who could not sit or stand for more than one hour per day would

---

[3] In his residual functional capacity finding, the ALJ concluded that Beining *could not* operate a motor vehicle. (R. at 23). In his hypothetical question to Dr. Reed, the ALJ apparently described an individual who *could* operate a motor vehicle. (R. at 68). The Commissioner attributes this discrepancy to a "typographical error in transcription." (Doc. 16 at 19). Since a remand is required for other reasons, the Court has no occasion to consider whether the potential defect in the ALJ's hypothetical question would independently necessitate a remand. *Ramirez v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004). It suffices to say that, on remand, the Commissioner should ensure that the forthcoming administrative proceedings are properly transcribed. Under the Act, the Commissioner is responsible for providing "the transcript of the record" necessary to facilitate judicial review. 42 U.S.C. § 405(g).

nevertheless be able to spend two or more hours pushing a cart of groceries. When Dr. Wyszomierski's contrary opinion is added to the equation, the Court cannot conclude as a matter of law that the ALJ abused his discretion in refusing to accept the limitations contained in Dr. Mlakar's assessment. *Chandler v. Commissioner of Social Security*, 667 F.3d 356, 360-363 (3d Cir. 2011); *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991).

The opinion of a nonexamining medical consultant is ordinarily insufficient to justify the rejection of an assessment provided by a treating physician. *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 357 (3d Cir. 2008). Although Dr. Newman evaluated Beining's mental abilities, no consultative examiner evaluated her physical abilities. Consultative examiners often bring a unique level of expertise and impartiality to the adjudicatory process.[4] *Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir. 1985); *Hansford v. Astrue*, 805 F.Supp.2d 140, 149-150 (W.D. Pa. 2011). Because the record would benefit from further development of both the vocational and medical evidence, the proper remedy in this case is a remand for further proceedings rather than a judicially-ordered award of benefits. *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 504-507 (3d Cir. 2009).

The Commissioner's "final decision" in this case will be vacated, and the case will be remanded for further consideration of Beining's application for disability insurance benefits. The Commissioner must "reopen and fully develop the record" before determining whether Beining is "disabled." *Thomas v. Commissioner of Social Security Administration*, 625 F.3d 798, 800 (3d Cir. 2010). No opinion is expressed as to whether benefits ultimately should be awarded in this case.

---

[4] The Court does not mean to suggest that a consultative physical examination of Beining is the only option available to facilitate the development of the medical evidence. Evidence postdating the ALJ's decision may render such an examination unnecessary. 20 C.F.R. § 404.1517.

10

Consistent with the foregoing, the Court hereby enters the following:

## II. **ORDER**

Plaintiff's Motion for Summary Judgment (**Doc. 13**) is **GRANTED**, Defendant's Motion for Summary Judgment (**Doc. 15**) is **DENIED**, and this case is **REMANDED FORTHWITH** for further administrative proceedings as described herein.

IT IS SO ORDERED.


August 13, 2014                                            s\Cathy Bissoon
                                                           Cathy Bissoon
                                                           United States District Judge

cc (via ECF email notification):

All counsel of record